UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

KEITH J. WILLIAMS,

            Plaintiff,

                                  Case No. 1:25-cv-1072

v.

                                  Honorable Jane M. Beckering

UNKNOWN PART(Y)(IES) #1 et al.,

            Defendants.

_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Originally filed in the United States District Court for the Eastern District of Michigan, this action was transferred to this Court for the convenience of the parties and in the interest of justice on September 8, 2025. (Ord. Transferring, ECF No. 10.) In an order (ECF No. 6) entered prior to transfer, Plaintiff was granted leave to proceed *in forma pauperis.*

Under Rule 21 of the Federal Rules of Civil Procedure, a court may at any time, with or without motion, add or drop a party for misjoinder or nonjoinder. Fed. R. Civ. P. 21. Applying this standard regarding joinder, the Court will drop as misjoined Defendant Pawley. The Court will direct the Clerk to sever Plaintiff's claim against Defendant Pawley into a new and separate action.

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v.*

*Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint against Defendants Unknown Part(y)(ies) #1, identified as "all other known/unknown individual penal authorities, that are affiliated with, or associated to, MDOC operations" for failure to state a claim. (Compl., ECF No. 1, PageID.2.) The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Foster, Ow, Ms. Traore, Mr. Traore, and Kowalski: First Amendment retaliation claims against Defendants Foster and Ow; Plaintiff's First Amendment retaliation claims against Defendant Ms. Traore to the extent premised upon Defendant Ms. Traore's lack of response to Plaintiff's kites; Plaintiff's First Amendment retaliation claim against Defendant Mr. Traore; Plaintiff's First Amendment retaliation claims against Defendant Kowalski to the extent premised upon Defendant Kowalski's decision to uphold the rejection of Plaintiff's book; First Amendment access to the courts claim; Eighth Amendment claim; and Fourteenth Amendment procedural due process claims.

The following claims remain in the case: First Amendment claims concerning the interference with Plaintiff's incoming mail against Defendants Foster, Ow, Ms. Traore and Kowalski; First Amendment retaliation claim against Defendant Ms. Traore regarding her actions on November 1, 2024; and First Amendment retaliation claim against Defendant Kowalski concerning the 90-day JPay restriction.

The Court will also deny Plaintiff's motion to appoint counsel (ECF No. 3) and will dismiss Plaintiff's "preemptive motion rejecting mediation" through the Eastern District's mediation program (ECF No. 7) as moot.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan. The events about which he complains, however, occurred at the Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan and the G. Robert Cotton Correctional Facility (JCF) in Jackson, Jackson County, Michigan. Plaintiff originally sued MDOC Grievance Coordinator Richard Russell, Michigan Legislative Ombudsman Keith Barber, JCF Grievance Coordinator T. Cobbs, LCF Staff C. Foster and Makey Ow, former JCF Warden Noah Nagy, LCF Warden Bryant Morrison, LCF Grievance Coordinators Jennifer Rohrig and J. Brawley, LCF Correctional Officer Unknown Traore, JCF Warden Kim Cargore, LCF Administrative Assistant Janet Traore, LCF Prison Counselor Karen Kowalski, JCF Staff Member, Michael E. Ulch, MBP Grievance Coordinator Unknown Bolton, MBP Warden Sarah Schroeder, URF Staff Member Unknown Pawley, and Unknown Part(y)(ies) listed as "all other known/unknown individual penal authorities[] that are affiliated with[] or associated to[] MDOC operations." (Compl., ECF No. 1, PageID.2.) Defendants are being sued in their official capacities for injunctive and declaratory relief, and their individual capacities for monetary relief. (*Id.*, PageID.4–5.)

Plaintiff alleges that, on March 25, 2023, while at JCF, he filed "a myriad of [g]rievances." (*Id.*, PageID.6.) Plaintiff was subsequently transferred to LCF, and, on August 9, 2024, his publisher sent him a "proof copy" of a book that he had written titled, "Cancer." (*Id.*) Plaintiff confirmed that the book was received at LCF, but Plaintiff did not receive the book. (*Id.*)

On September 9, 2024, Plaintiff sent a kite to the LCF mailroom threatening to take legal action related to the missing book. (*Id.*, PageID.7.) The following day, Plaintiff received a response from Defendants Foster and Ow indicating that the book had been rejected because it was in

3

violation of MDOC policy. (*Id.*) On September 11, 2024, Plaintiff sent a letter to Defendant Kowalski, contesting the rejection. (*Id.*)

On September 30, 2024, Defendant Kowalski called Plaintiff into her office and accused him of filing an untimely request for hearing to contest the book's rejection. (*Id.*) She then held a hearing concerning the rejection and upheld the rejection. (*Id.*)

On October 3, 2024, Plaintiff sent Defendant Ms. Traore several kites appealing the book's rejection, claiming that the book had previously been permitted by an African American staff member, and that books written by African Americans concerning their American experience were being "methodically . . . banned" by the MDOC." (*Id.*, PageID.8.) Defendant Ms. Traore did not respond. (*Id.*)

On October 8, 2024, Plaintiff sent another kite to Defendant Ms. Traore, requesting her involvement with resolving the book rejection. (*Id.*) And, on October 24, 2024, Plaintiff sent a disbursement to Defendant Kowalski's office to have the book mailed to his brother. (*Id.*)

On October 24, 2024, Defendant Traore responded to Plaintiff's kites with an excerpt of MDOC policy that states in part, "If the warden concurs with the hearing officer's decision [to reject a book], the [w]arden or designee shall promptly submit **copies** of [the rejection], the publication's cover, and a **representative sampling** of the **specific sections** of the publication found to violate . . . policy." (*Id.*) (emphasis added by Plaintiff).

On October 31, 2024, Plaintiff sent a JPay email to his publisher concerning the book's rejection and stating that Defendant Ms. Traore was "a coward" and "a typical Black a** White supremacist," and that he planned to write about her in future books. (*Id.*, PageID.8–9.) The following day, Defendant Ms. Traore chastised Plaintiff for his message "before several White correctional officers with tasers." (*Id.*, PageID.9.) Also on November 1, 2024, Defendant Ms.

Traore issued Plaintiff a misconduct report concerning his JPay message and a notice of hearing (NOI) recommending a 90-day JPay restriction. (*Id.*)

Plaintiff filed two grievances against Defendant Ms. Traore. (*Id.*, PageID.10.) Defendants Rohrig and Brawley rejected the grievances as vague and placed Plaintiff on a modified grievance restriction. (*Id.*) Non-party Sergeant Shameleh found Plaintiff guilty of the November 1, 2024, misconduct charge of insolence and Plaintiff received nine days' loss of privileges. (*Id.*)

On November 8, 2024, Defendant Kowalski held a hearing on the NOI, imposing the 90-day JPay restriction. (*Id.*) That day, Plaintiff sent "a myriad of written request(s)" to Defendants Morrison, Rohrig, Brawley, and Kowalski for misconduct and grievance appeal forms. (*Id.*)

On November 9, 2024, Plaintiff asked Defendant Kowalski about the status of the book because Plaintiff's brother said he did not receive it. (*Id.*) Defendant Kowalski told Plaintiff that Defendant Traore had sent the book to MDOC headquarters to be placed on a "restrictive list." (*Id.*) Defendant Kowalski directed Plaintiff to send a kite to Defendant Long regarding the location of the book. (*Id.*) Defendant Long did not respond to Plaintiff's kites. (*Id.*)

On November 10, 2024, Plaintiff was provided with grievance appeal forms but was not provided with a form to appeal his misconduct conviction. (*Id.*, PageID.12.) Plaintiff appealed the rejection of his grievances; however, Plaintiff's appeals were rejected by Defendants Morrison and Russell. (*Id.*, PageID.12–13.) Plaintiff also sent a petition to Defendant Barber asking that he direct LCF staff to provide Plaintiff with a form to appeal his misconduct conviction, but Defendant Barber did not respond. (*Id.*, PageID.12.)

On November 28, 2024, Defendant Mr. Traore woke Plaintiff up at 3:00 a.m., took Plaintiff's pillow out from under his head, and told Plaintiff that he would make Plaintiff regret filing the grievances against Defendant Ms. Traore. (*Id.*, PageID.13.) Plaintiff filed a grievance

against Defendant Mr. Traore, which was rejected by Defendants Rohrig and Brawley. (*Id.*) Plaintiff's appeals of the rejected grievance were denied by LCF staff and Defendant Russell. (*Id.*, PageID.15.)

On December 3, 2024, Plaintiff was visited by non-party Baylie Kaiser, who had been sent by Defendant Barber to discuss Plaintiff's complaints. (*Id.*, PageID.13.) In connection with his discussion of this meeting, Plaintiff alleges Defendants Ulch and Pawley had "evaded legal accountability" in prior actions filed by Plaintiff against them. (*Id.*, PageID.15.) Plaintiff also claims that Defendant Pawley stole Plaintiff's television. (*Id.*, PageID.14.)

On December 14, 2024, non-party Dena Anderson of "Safe-&-Just" informed Plaintiff that she was investigating his complaints concerning the rejection and confiscation of his book but had not heard back from "headquarters." (*Id*, PageID.15–16.)

On December 30, 2024, Plaintiff sought to bring a criminal complaint concerning the events described in this action but did not receive a response from law enforcement. (*Id.*, PageID.16.)

It appears that Plaintiff alleges that he submitted additional grievances on January 2, 2025; however, these too were rejected. (*Id.*)

Plaintiff was transferred from LCF to Marquette Branch Prison (MBP) on January 28, 2025. (*Id.*, PageID.17.) On February 24, 2025, Plaintiff submitted a kite to Defendant Bolton requesting a copy of his "Grievance Summary Report." (*Id.*) Defendant Bolton told Plaintiff that he would need to file a Freedom of Information Act request. (*Id.*) Plaintiff filed a grievance against Defendant Bolton that was rejected by Defendants Russell and Schroeder. (*Id.*, PageID.18.)

As a result of the events described in Plaintiff's complaint, Plaintiff brings claims for violation of his First and Fourteenth Amendment rights, as well as claims related to his use of the

grievance system. (*Id.*, PageID.18.) Plaintiff seeks injunctive, declaratory, and monetary relief. (*Id.*, PageID.19–20.)

## II.    Procedural History

Upon receipt of Plaintiff's complaint, the United States District Court for the Eastern District of Michigan reviewed the complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and dismissed Plaintiff's complaint against Defendants Nagy, Cargore, Morrison, Schroeder, Russell, Barber, Cobbs, Ulch, Rohrig, Brawley, and Bolton for failure to state a claim. (ECF No. 9.) The court also dismissed, for failure to state a claim, claims concerning the wrongful denial of Plaintiff's grievances. (*Id.*) The Eastern District Court then transferred Plaintiff's claims against Defendants Foster, Ow, Ms. Traore, Mr. Traore, Kowalski, and Pawley to this Court. (ECF No. 10.)

## III.    Misjoinder

In the portion of Plaintiff's complaint transferred to this Court by the Eastern District Court, Plaintiff sues LCF Defendants Foster, Ow, Ms. Traore, Mr. Traore, and Kowalski, and URF staff member Defendant Pawley. At this stage, the Court must address whether these Defendants and claims are properly joined in a single lawsuit.

### A.    Improper Joinder

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action:

> Persons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2). Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." *Id.*

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18 . . . .

> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), *and Garcia v. Munoz*, No. 08-1648, 2008 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also United States v. Mississippi*, 380 U.S. 128, 142–43 (1965) (joinder of defendants is permitted by Rule 20 if both commonality and same transaction requirements are satisfied); *UWM Student Ass'n v. Lovell*, 888 F.3d 854, 863 (7th Cir. 2018) ("Unrelated claims against different defendants belong in different suits." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). A district judge necessarily has considerable discretion in applying Rules 18 and 20. The rules 'operate[ ] independently' because Rule 20 contains limitations that Rule 18 does not, and the Rule 20 inquiry comes first.").

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778 (internal quotation omitted). When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "'the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the

defendants were at different geographical locations.'" *Id.* (quoting *Nali v. Mich. Dep't of Corr.*, No. 07-10831, 2007 WL 4465247, at *3 (E.D. Mich. Dec. 18, 2007)).

A prisoner like plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .
>
> A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions—should be rejected if filed by a prisoner.

*George*, 507 F.3d at 607; *see also Brown v. Blaine*, 185 F. App'x 166, 168–69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three strikes provision of PLRA).

Under these circumstances, to allow Plaintiff to proceed with improperly joined claims and Defendants in a single action would permit him to circumvent the PLRA's filing fee provisions. Furthermore, he would avoid the consequences of filing at least three actions with all claims dismissed as meritless, frivolous, or for failure to state a claim. Courts are obligated to reject misjoined complaints like Plaintiff's. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011).

Here, Plaintiff's claims against LCF Defendants Foster, Ow, Ms. Traore, Mr. Traore, and Kowalski all arguably arise out of the same transaction or occurrence. However, Plaintiff has not alleged any facts that would support an inference that Plaintiff's claim against Defendant Pawley for allegedly stealing Plaintiff's television at a different correctional facility is in any way

connected to the incidents concerning the rejection of Plaintiff's book at LCF. Plaintiff has, therefore, improperly joined Defendant Pawley.

### B.    Remedy

Because the Court has concluded that Plaintiff has improperly joined Defendant Pawley, the Court must determine an appropriate remedy. Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." *Id.* Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572–73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'") (quoting *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989)); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV, Inc.*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV, Inc.*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV, Inc.*, 467 F.3d at 846-47; *Michaels Building Co.*, 848 F.2d at 682.

Plaintiff brings this action under 42 U.S.C. § 1983. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(2); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996). Here, it appears that Plaintiff's claim against Defendant Pawley arises out of events that occurred before Plaintiff was incarcerated at JCF in 2023, or LCF in 2024 and 2025. Therefore, the Court cannot discern whether the statute of limitations has or will run on Plaintiff's claims against misjoined Defendant Pawley. Therefore, out of an abundance of caution, the Court will not dismiss Plaintiff's claim against Defendant Pawley but will sever Plaintiff's claim against Defendant Pawley into a new and separate action.

Accordingly, the Court will exercise its discretion under Rule 21 and drop Defendant Pawley as misjoined. The Court will direct the Clerk to sever Plaintiff's claim against Defendant Pawley into a new and separate action.

## IV.    Reconsideration

In its order entered on September 8, 2025 (ECF No. 9), the Eastern District Court allowed Plaintiff to proceed with his claims against Defendants Foster, Ow, Ms. Traore, Mr. Traore, and Kowalski but for Plaintiff's claim related to the denial of his grievances. However, under Rule 54(b) of the Federal Rules of Civil Procedure, a non-final order is subject to reconsideration at any time before entry of a final judgment. Fed. R. Civ. P. 54(b); *see ACLU v. McCreary Cnty.*, 607 F.3d 439, 450 (6th Cir. 2010). Therefore, the Court will exercise its inherent power to reconsider the September 8, 2025, decision as it relates to Plaintiff's remaining claims against Defendants Foster, Ow, Ms. Traore, Mr. Traore, and Kowalski.

11

## V.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Claims Against "All Other Known/Unknown Individual Penal Authorities, That Are Affiliated With, Or Associated To, MDOC Operations"

Plaintiff lists as Defendants "all other known/unknown individual penal authorities, that are affiliated with, or associated to, MDOC operations." However, Plaintiff makes no factual allegations against any unknown Defendant.

It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544 (holding that, to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant) (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)); *Rodriguez v. Jabe*, 904 F.2d 708 (6th Cir. 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries.").

Indeed, even if Plaintiff had made factual allegations against the Defendant Unknown Part(y)(ies) listed in the complaint, any factual allegations against them as a group would be insufficient to implicate any named Defendant. "Summary reference to a single, five-headed 'Defendants' [or officers or staff] does not support a reasonable inference that each Defendant is liable . . . ." *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citation omitted). Thus, Plaintiff's claims against Defendants Unknown Part(y)(ies), identified as "all other known/unknown individual penal authorities[] that are affiliated with[] or associated to[] MDOC operations" fall far short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure and will be dismissed. Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

### B.    First Amendment Claims Regarding Incoming Mail

Plaintiff alleges that Defendants Foster, Ow, Ms. Traore, and Kowalski interfered with his ability to receive a copy of his book. The Court construes Plaintiff's complaint as asserting a claim under the First Amendment.

"A prisoner's right to receive mail is protected by the First Amendment." *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). "Mail is one medium of free speech, and the right to send and receive mail exists under the First Amendment." *Al-Amin v. Smith*, 511 F.3d 1317, 1333 (11th Cir. 2008) (citing *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 427 (1993)). A prisoner, however, retains only those First Amendment freedoms which are "not inconsistent with his status as a prisoner or with legitimate penological objectives of the corrections systems." *Martin v. Kelley,* 803 F.2d 236, 240 n.7 (6th Cir. 1986) (*quoting Pell*, 417 U.S. at 822); *see Turner v. Safley,* 482 U.S. 78 (1987). Those legitimate penological objectives include prison security, and the objective of maintaining a secure

prison allows "prison officials [to] open prisoners' incoming mail pursuant to a uniform and evenly applied policy . . . ." *Lavado v. Keohane*, 992 F.2d 601, 607 (6th Cir. 1993).

At this stage of the proceedings, accepting Plaintiff's factual allegations as true, and without having reviewed the book in question or having any information regarding the reasons for its rejection, the Court will allow Plaintiff to proceed with his First Amendment claim against Defendants Foster, Ow, Ms. Traore, and Kowalski concerning the rejection of his book.

### C.    First Amendment Retaliation Claims

Throughout his complaint, Plaintiff contends that Defendants retaliated against him, in violation of the First Amendment, in various ways. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff alleges that the various retaliatory acts occurred after he filed grievances and lawsuits. Plaintiff has therefore sufficiently alleged that he engaged in First Amendment protected conduct. *See Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002); *Smith*, 250 F.3d at 1037; *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). The Court will consider below whether Plaintiff has alleged sufficient facts regarding the second and third elements for each named Defendant.

###### 1.    Defendants Foster and Ow

Plaintiff alleges that Defendants Foster and Ow responded to Plaintiff's kite indicating that his book had been rejected because it was in violation of MDOC policy. (Compl., ECF No. 1, PageID.7.) Even assuming that Defendants Foster and Ow made the decision to reject Plaintiff's book, thereby satisfying the second element of a First Amendment retaliation claim, Plaintiff has not alleged facts that would demonstrate that the rejection was motivated by retaliatory animus.

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (N.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). However, "because prisoner retaliation claims are easily fabricated, and accordingly pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration, we are careful to require non-conclusory allegations." *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003) (internal quotation marks omitted). Therefore, "alleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Skinner v. Bolden*, 89 F. App'x. 579, 579–80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive).

Here, Plaintiff fails to offer any facts that would plausibly suggest that Defendants Foster and Ow were motivated by retaliatory animus in rejecting Plaintiff's book. Indeed, Plaintiff's complaint does not suggest that Defendants Foster and Ow were aware of the grievances and

lawsuits submitted by Plaintiff while Plaintiff was at JCF. Accordingly, the Court will dismiss Plaintiff's First Amendment retaliation claims against Defendants Foster and Ow.

### 2. Defendant Ms. Traore

Plaintiff alleges that Ms. Traore ignored Plaintiff's kites concerning the rejection of Plaintiff's book and, on November 1, 2024, chastised Plaintiff in the presence of officers with tasers and issued Plaintiff a notice of hearing and misconduct charge concerning an email that Plaintiff had written about her. The Court will allow Plaintiff to proceed with his First Amendment retaliation claim against Ms. Traore concerning the November 1, 2024, events. However, the Court will dismiss Plaintiff's First Amendment retaliation claim to the extent that it is premised upon Ms. Traore's actions in ignoring Plaintiff's kites.

Like his grievances, Plaintiff's kites concerned complaints regarding the rejection of his book. However, many courts, including this one, have held that the denial or refusal to process a grievance is not adverse action. *See, e.g., Cameron v. Gurnoe*, No. 2:19-cv-71, 2019 WL 2281333, at *4–5 (W.D. Mich. May 29, 2019) (citing cases); *Branch v. Houtz*, No. 1:16-cv-77, 2016 WL 737779, at *6 (W.D. Mich. Feb. 25, 2016); *Ross v. Westchester Cnty. Jail*, No. 10 Civ. 3937(DLC), 2012 WL 86467, at *8 (S.D.N.Y. Jan. 11, 2012) (discussing that the refusal to file a grievance is, without more, insufficient to constitute an adverse action); *Stone v. Curtin*, No. 1:11-cv-820, 2011 WL 3879505, at *4 (W.D. Mich. Aug. 31, 2011) (concluding that the failure to process a prison grievance would not deter a prisoner of ordinary firmness from exercising his right to file a grievance); *Green v. Caruso*, No. 1:10-cv-958, 2011 WL 1113392, at *10 (W.D. Mich. Mar. 24, 2011) (finding that the denial of a prisoner's grievances was not sufficiently adverse to support a retaliation claim); *Burgos v. Canino*, 641 F. Supp. 2d 443, 454 (E.D. Pa. 2009), *aff'd*, 358 F. App'x 302 (3d Cir. 2009) (noting that rejection or denial of prison grievances does not constitute adverse action for purposes of a retaliation claim). Moreover, Plaintiff has not alleged any facts that would

plausibly suggest that Defendant Ms. Traore's lack of response was motivated by retaliatory animus in any way. Accordingly, the Court will dismiss Plaintiff's First Amendment retaliation claim against Ms. Traore to the extent premised upon her failure to respond to Plaintiff's kites.

### 3.   Defendant Mr. Traore

Plaintiff alleges that Defendant Mr. Traore woke Plaintiff up at 3:00 a.m. by "snatching his pillow" and told Plaintiff that he would "make [Plaintiff] regret" filing the grievances against Defendant Ms. Traore. (Compl., ECF No. 1, PageID.13.) Plaintiff does not allege that Defendant Mr. Traore menaced him with the pillow or set forth any other facts showing that this exchange constituted more than an "inconsequential" or "de minimis" threat. *See Hardy v. Adams*, No. 16-2055, 2018 WL 3559190, at *3 (6th Cir. Apr. 13, 2018) ("The alleged threat by Adams that she would make Hardy's life 'hell' is simply too vague to pass this threshold."); *Sensabaugh v. Halliburton*, 937 F.3d 621, 629 (6th Cir. 2019) ("In any event, threats alone are generally not adverse actions for retaliation purposes."); *Hornbeak-Denton v. Myers*, 361 F. App'x 684, 689 (6th Cir. 2010) ("We adhere to the general rule that bare threats are insufficient to constitute adverse actions[.]").[1] Plaintiff's complaint thus fails to plausibly allege facts establishing an "adverse action" sufficient to support a First Amendment retaliation claim against Defendant Mr. Traore, and the Court will dismiss this claim.

---

[1] *See also Moon v. Mendez*, No. 1:24-CV-1138, 2025 WL 314097, at *13 (W.D. Mich. Jan. 28, 2025) ("[T]he alleged threat to have Plaintiff sent to segregation was entirely vague"); *Shisler v. Golladay*, No. 2:19-cv-80, 2019 WL 2590693, at *4 (W.D. Mich. June 25, 2019) (concluding a threat that a "ticket" would be the least of the plaintiff's worries was "simply too vague" to support a retaliation claim); *Dahlstrom v. Butler*, No. 2:18-cv-101, 2019 WL 91999, at *11 (W.D. Mich. Jan. 3, 2019) (concluding that a threat "to 'get' a prisoner who files a grievance" and "steps out of line" was too non-specific to qualify as an adverse action); *Yates v. Rogers*, No. 2:18-cv-180, 2018 WL 6629366, at *7 (W.D. Mich. Dec. 19, 2018) ("Defendant's vague threat to 'get' Plaintiff" was not an "adverse action"); *Johnson v. Govern*, No. 2:17-cv-125, 2018 WL 6321548, at *2 (W.D. Mich. Dec. 4, 2018) ("alleged threat to 'put a case' on Johnson" is too "vague to constitute adverse action"); *Hunter v. Palmer*, No. 1:17-cv-109, 2017 WL 1276762, at *11 (W.D. Mich. Apr. 6, 2017) (threat "that complaining would get him into a lot of trouble . . . falls short of adverse action").

### 4.      Defendant Kowalski

Plaintiff alleges that Defendant Kowalski upheld the rejection of Plaintiff's book and imposed the 90-day JPay restriction following Defendant Ms. Traore's NOI. As to the claims concerning the rejection of Plaintiff's book, as with Plaintiff's claims against Defendants Foster, Ow, and Traore, Plaintiff fails to provide the Court with any well-pleaded factual allegations that would plausibly suggest that this action was motivated by retaliatory animus or even that Defendant Kowalski was aware of Plaintiff's previous grievances and lawsuits while at JCF.

However, Plaintiff alleges that the 90-day JPay restriction was imposed in response to Plaintiff's email to his publisher. Therefore, accepting Plaintiff's allegations as true as is required at this stage, the Court will not dismiss this portion of Plaintiff's First Amendment retaliation claim on screening.

### D.      First Amendment Access to the Courts Claims

In his complaint, Plaintiff alleges that Defendants have "frustrate[d his] court access." (Compl., ECF No. 1, PageID.2.) It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). Prison officials may not erect certain barriers that may impede the inmate's access to the courts. *See Knop*, 977 F.2d at 1009.

To state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead that the defendant's actions have hindered, or are presently hindering, efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates

> need in order to attack their sentences, directly or collaterally, and in order to
> challenge the conditions of their confinement. Impairment of any other litigating
> capacity is simply one of the incidental (and perfectly constitutional) consequences
> of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals,

habeas corpus applications, and civil rights claims only." *Thaddeus-X*, 175 F.3d at 391 (en banc).

Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353;

*accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to

include the requirement that an action be non-frivolous).

In addition, the Supreme Court has squarely held that "the underlying cause of action . . . is

an element that must be described in the complaint, just as much as allegations must describe the

official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing

*Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause

of action and its lost remedy must be addressed by allegations in the complaint sufficient to give

fair notice to a defendant." *Id.* at 415.

Plaintiff's complaint does not include any well-pleaded factual allegations that would allow

the Court to infer that Defendants have hindered a non-frivolous legal claim in a direct appeal,

habeas corpus application, or civil rights claim. Therefore, any claims for interference with

Plaintiff's access to the courts are properly dismissed.

To the extent that Plaintiff is attempting to raise a First Amendment access to the Court's

claim based upon the denial of Plaintiff's grievances, he cannot. Defendants' actions (or inactions)

in response to Plaintiff's grievances have not barred Plaintiff from seeking a remedy for his

complaints. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). Indeed, Plaintiff's ability to seek redress

is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F.

Supp. 8, 10 (N.D. Ill. 1982).

20

Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis*, 518 U.S. at 355 (requiring actual injury); *Bounds*, 430 U.S. at 821–24. The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001).

Considering the foregoing, the Court finds that Plaintiff has failed to state a cognizable First Amendment claim for interference with Plaintiff's access to the courts.

### E.    Eighth Amendment Claim

Plaintiff alleges that Defendant Mr. Traore threatened him, stating, "I'ma make you regret filing those Grievances on my sista." (Compl., ECF No. 1, PageID.13.) The Court will construe this allegation as raising an Eighth Amendment claim.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Eighth Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v.*

*Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). Therefore, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

For a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew

of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

The use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions. *See Ivey*, 832 F.2d 954–55; *see also Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (holding that harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Wingo v. Tenn. Dep't of Corr.*, 499 F. App'x 453, 455 (6th Cir. 2012) (noting that "[v]erbal harassment or idle threats by a state actor do not create a constitutional violation and are insufficient to support a section 1983 claim for relief" (citing *Ivey*, 832 F.2d at 955)); *Miller v. Wertanen*, 109 F. App'x 64, 65 (6th Cir. 2004) (affirming district court's conclusion that verbal harassment in the form of a threatened sexual assault "was not punishment that violated Miller's constitutional rights" (citing *Ivey*, 832 F.2d at 955)); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement, or attitude of a prison official with which we might disagree.").

The Sixth Circuit recently addressed, as a matter of first impression, whether "unprovoked and repeated threats to a prisoner's life, combined with a demonstrated means to immediately carry out such threats, constitute conduct so objectively serious as to" violate the Eighth Amendment. *See Small v. Brock*, 963 F.3d 539, 541 (6th Cir. 2020). In *Small*, the plaintiff alleged that the officer had "brandished a knife, threatened to kill Small, and motioned in a manner suggesting how [he] would use the knife to kill Small." *Id.* at 540. The Sixth Circuit held that an inmate sets forth a plausible Eighth Amendment claim when repeated verbal threats to the inmate's life were combined with "concrete steps, such as aggressively brandishing a deadly weapon, to make those

23

threats credible." *Id.* at 541 (citing cases for the proposition that "'objectively credible' death threats that cause a prisoner to fear for his life violate the Eighth Amendment").

Here, however, Plaintiff has not set forth any facts suggesting that Defendant Mr. Traore threatened Plaintiff's life, that his threat was repeated, or that his threat was combined with concrete steps to make it credible. Accordingly, Plaintiff's allegations that Defendant Mr. Traore threatened to make him "regret" filing grievances against Defendant Ms. Traore do not rise to the level of the threats at issue in *Small*. The Court will dismiss Plaintiff's Eighth Amendment claim premised upon verbal harassment.

### F.    Fourteenth Amendment Procedural Due Process

Plaintiff claims that he was issued a false misconduct conviction and denied due process in connection with the NOI, which resulted in a 90-day JPay restriction. The Court will liberally construe these allegations as raising a claim for violation of Plaintiff's right to procedural due process.

To prevail on a procedural due process claim, an inmate must first demonstrate that he was deprived of "life, liberty, or property" by government action. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). The Supreme Court has long held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). Nonetheless, prisoners retain a liberty interest with respect to state-imposed prison discipline that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

The allegations of Plaintiff's complaint do not plausibly suggest that Plaintiff's misconduct conviction affected any interests that would fall into either of the categories identified in *Sandin* as protected by due process, i.e., an inevitable effect on the duration of Plaintiff's sentence or an atypical and significant hardship.

First, Plaintiff was charged with insolence, a class II misconduct. The Sixth Circuit has routinely held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g.*, *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004), *overruled on other grounds by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999). Under MDOC Policy Directive 03.03.105, ¶ C (eff. Aug. 26, 2024), a Class I misconduct is a "major" misconduct and Class II and III misconducts are "minor" misconducts. The policy further provides that prisoners are deprived of good time or disciplinary credits only when they are found guilty of a Class I misconduct. *Id*. ¶ DDDD. Here, Plaintiff was charged with a Class II misconduct. (ECF No. 1-2, PageID.19.) Therefore, the misconduct charge could not have resulted in the loss of good time credits.

Second, Plaintiff has not alleged facts that would plausibly suggest that he suffered a "significant and atypical deprivation" as a result of the misconduct conviction or the 90-day JPay restriction. Plaintiff alleges that he received 9 days' loss of privileges as a result of the misconduct conviction. (ECF No. 1, PageID.72.) Pursuant to MDOC Policy Directive 03.03.105, the "loss of privileges" sanction involves the loss of various privileges, such as access to the day room, exercise facilities, group meetings, "[o]ut of cell hobbycraft activities," the kitchen area, the general library (not including the law library), movies, music practice, and other "[l]eisure time activities." MDOC Policy Directive 03.03.105, Attach. E.

In addressing Plaintiff's claims, the Court is guided by precedent concerning the most significant sanction: segregation. The Supreme Court has held that even placement in segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in

their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey*, 524 F.3d at 794.

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case—disciplinary segregation for 30 days—did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484. Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process. *See Joseph*, 410 F. App'x at 868 (61 days in segregation is not atypical and significant). It has also held, in specific circumstances, that confinement in segregation for a much longer period does not implicate a liberty interest. *See, e.g.*, *Jones v. Baker*, 155 F.3d 810, 812–13 (6th Cir. 1998) (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). Generally, only periods of segregation lasting for several years or more have been found to be atypical and significant. *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest); *Harden-Bey*, 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, *i.e.*, three years without an explanation from prison officials, implicates a liberty interest).

Where stays of months in the most restrictive sanction of segregation is not considered an atypical or significant hardship, *see Joseph*, 410 F. App'x at 868, it defies logic to suggest that the lesser penalties of loss of privileges or a JPay restriction for that duration could be atypical or

significant. Sixth Circuit authority bears that out. *See Carter*, 69 F. App'x at 680 (nine-month loss of package privileges did not impose an atypical and significant hardship). Therefore, the Court will dismiss Plaintiff's Fourteenth Amendment procedural due process claims for failure to state a claim.

## VI.    Motion to Appoint Counsel

With his complaint, Plaintiff filed a motion to appoint counsel. (ECF No. 3.) Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado*, 992 F.2d at 604–05. The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court determines that the assistance of counsel does not appear necessary to the presentation of Plaintiff's case here. The Court will therefore deny Plaintiff's request for appointment of counsel (ECF No. 3)

## VII.    Preemptive Motion Rejecting Eastern District of Michigan's Mediation Program

On June 11, 2025, Plaintiff submitted a motion preemptively rejecting the Eastern District of Michigan's mediation program. (ECF No. 7.) In that motion, Plaintiff indicated that he received a "Notice of Mediation Program" from Deputy Clerk Sylvester informing Plaintiff of possible placement in the Eastern District's mediation program and explains that he does not wish to participate. (*Id.*)

This case was transferred to this Court and is no longer eligible for the Eastern District's mediation program. Therefore, the Court will dismiss Plaintiff's motion to be excused from that

program as moot. To the extent that Plaintiff may be offered to participate in a mediation program facilitated by this Court, Plaintiff will be given the opportunity to review the details of the program and consent or decline as he so chooses within the guidelines set forth by the Court.

## Conclusion

Pursuant to Rule 21, the Court determines that Defendant Pawley will be dropped as misjoined. The Court will direct the Clerk to sever Plaintiff's claims against Defendant Pawley into a separate action.

Having conducted the review required by the PLRA, the Court will dismiss Plaintiff's complaint against Defendants Unknown Part(y)(ies) #1, identified as "all other known/unknown individual penal authorities, that are affiliated with, or associated to, MDOC operations" for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Foster, Ow, Ms. Traore, Mr. Traore, and Kowalski: First Amendment retaliation claims against Defendants Foster and Ow, Plaintiff's First Amendment retaliation claims against Defendant Ms. Traore to the extent premised upon Defendant Ms. Traore's lack of response to Plaintiff's kites, Plaintiff's First Amendment retaliation claim against Defendant Mr. Traore, Plaintiff's First Amendment retaliation claims against Defendant Kowalski to the extent premised upon Defendant Kowalski's decision to uphold the rejection of Plaintiff's book, First Amendment access to the courts claim, Eighth Amendment claim, and Fourteenth Amendment procedural due process claims.

Plaintiff's First Amendment claims concerning the interference with Plaintiff's incoming mail against Defendants Foster, Ow, Ms. Traore and Kowalski, First Amendment retaliation claim against Defendant Ms. Traore regarding her actions on November 1, 2024, and First Amendment

retaliation claim against Defendant Kowalski concerning the 90-day JPay restriction remain in the case.

The Court will also deny Plaintiff's motion to appoint counsel (ECF No. 3) and will dismiss Plaintiff's "preemptive motion rejecting mediation" through the Eastern District's mediation program (ECF No. 7) as moot.

An order consistent with this opinion will be entered.


Dated:   November 3, 2025                  /s/ Jane M. Beckering
                                     Jane M. Beckering
                                     United States District Judge